**Melvin M. Wright, Jr., Esquire**
**Law Office of Melvin M. Wright, Jr., LLC**
1100 Taylors Lane, Unit 9
Cinnaminson, NJ 08077
Tel:  (609) 505-2365
Fax: (609) 531-6350
Attorney ID No. 002301993
Attorneys for Plaintiff

**Anthony H. Ogozalek, Jr.**
**Law Office of Anthony H. Ogozalek, Jr.**
1100 Taylors Lane, Unit 9
Cinnaminson, NJ  08077
Tel: (856) 816-8574
Fax: (856) 316-4679
Attorney ID No. 037022006
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY (CAMDEN VICINAGE)

ESTELLA PRATT, individually; and as
Personal Representative for the Estate of
JEFFREY THOMAS, deceased

            Plaintiff

    vs

CITY OF CAMDEN, CAMDEN POLICE
CHIEF JOHN S. THOMSON, STATE OF
NEW JERSEY, NEW JERSEY STATE
POLICE SUPERINTENDENT RICK
FUENTES, MARK SAUNDERS, TERHAN
HINSON, ROBERT MAY, MAURICE
SMITH, WILLIAM NUEMANN,
MATTHEW MOORE, JEROME MORAN,
and JOHN DOES 8 – 30,
all individual defendants in their individual
capacities

            Defendants

**THIRD AMENDED COMPLAINT
AND JURY DEMAND**


**CIVIL NO. 1:13-CV-06830-JBS-AMD**

      Estella Pratt, individually and as Personal Representative for the Estate of Jeffrey Thomas,

deceased ("Plaintiff"), by and through her attorneys of record, plead and allege as follows:

## PRELIMINARY STATEMENT

      This is an action for the wrongful death of Jeffrey Thomas, after his mother, Estella Pratt,

called the police to ask that her son be transported by ambulance to the hospital.  The police,

consisting of members from the Camden City and New Jersey State Police, responded and improperly exercised deadly force against Mr. Thomas. Mr. Thomas was killed after suffering multiple gunshot wounds inflicted by those named in this Complaint.

## JURISDICTION

1.      This Court has jurisdiction to try this case involving violation of the civil rights of Plaintiff's decedent, pursuant to 28 U.S.C. sec. 1343. This Court has pendant jurisdiction pursuant to 28 U.S.C. sec. 1367, to adjudicate claims based on Plaintiff's decedent's state law and common law rights.  Plaintiff filed timely Notices of Claim against the City of Camden and State of New Jersey, which claims have not been adjusted.

## VENUE

2.      Venue is properly laid in the District of New Jersey, in the Camden vicinage, where the events complained of took place, and where the defendants reside or have their place of municipal incorporation.

## PARTIES

3.      Plaintiff, Estella Pratt, is an individual and mother of the deceased Jeffrey Thomas, and has been duly appointed as the Personal Representative of the decedent's estate.  At all material times herein, plaintiff, Estella Pratt, was a resident of the City of Camden, Camden County, State of New Jersey, and the United States.

4.      Defendant City of Camden, at all times mentioned herein was and is a municipality incorporated under the laws of New Jersey, and is capable of being sued. The Camden City Police Department, now known as the Camden County Police Department, was an agency and department of defendant, City of Camden.

2

5.      At all material times herein, Defendant Camden Police Chief John S. Thomson, was employed by defendant, City of Camden.

6.      At all material times herein, Defendant Mark Saunders was a police officer employed by, and acting pursuant to the scope of, his employment with Defendant, Camden City Police Department. Defendant Saunders' actions are therefore imputed to the defendant, City of Camden.

7.      At all material times herein, Defendant Terhan Hinson was a police officer employed by, and acting pursuant to the scope of, his employment with Defendant, Camden City Police Department. Defendant Hinson's actions are therefore imputed to the defendant, City of Camden.

8.      At all material times herein, defendant, Camden Police Officer John Does 3-20, were employed by Defendant, City of Camden and were acting within the scope of their employment with the City of Camden.

9.      At all material times herein, Defendant, State of New Jersey, is the political subdivision of the United States and is capable of being sued in this Court on certain causes of action.

10.     At all material times herein, Defendant New Jersey State Police was an agency and department of Defendant, State of New Jersey and its Department of Law and Public Safety.  It is therefore capable of being sued in this Court on certain causes of action.

11.     At all material times herein, Defendant New Jersey State Police Superintendent Rick Fuentes was employed by Defendant State of New Jersey and Defendant New Jersey State Police in its Department of Law & Public Safety.

12.     At all material times herein, Defendant Robert May was a Staff Sergeant employed by, and acting pursuant to the scope of, his employment with Defendant, New Jersey State Police. Defendant May's actions are therefore imputed to the defendant, New Jersey State Police.

13.     At all material times herein, Defendant Maurice Smith was a Sergeant employed by, and acting pursuant to the scope of, his employment with Defendant, New Jersey State Police.  Defendant Smith's actions are therefore imputed to the defendant, New Jersey State Police.

14.     At all material times herein, Defendant William Nuemann was a Trooper employed by, and acting pursuant to the scope of, his employment with Defendant, New Jersey State Police. Defendant Nuemann's actions are therefore imputed to the defendant, New Jersey State Police.

15.     At all material times herein, Defendant Matthew Moore was a Trooper employed by, and acting pursuant to the scope of, his employment with Defendant, New Jersey State Police.  Defendant Moore's actions are therefore imputed to the defendant, New Jersey State Police.

16.     At all material times herein, Defendant Jerome Moran was a Trooper employed by, and acting pursuant to the scope of, his employment with Defendant, New Jersey State Police.  Defendant Moran's actions are therefore imputed to the defendant, New Jersey State Police.

17.     At all material times herein, defendant New Jersey State Troopers John Does 26-30 were employed by the Defendant State of New Jersey and Defendant New Jersey State Police.

18.     At all material times herein, Defendants City of Camden, and Camden Police Department, State of New Jersey, Department of Law & Public Safety, New Jersey State Police, and John Does 26-30, were engaged in providing police officers or State Troopers and police protection to the City of Camden and its citizens.

4

19.     At all relevant times herein, defendants were acting in their capacity as agents, servants, employees, related contractors, or subcontractors of their respective governmental agencies. Defendants are sued individually. The true names of John Does 26-30 will be added when their names are discovered.

20.     This action is brought against individual defendants for their conduct as described herein; the individuals and entities that are the supervising agencies and/or commanding officers responsible for the conduct of the individual Defendants, Camden Police Officers John Does 3-20; and/or New Jersey State Troopers John Does 26-30; for their failure to take corrective action with respect to the individual defendants, and defendant John Does, who were improperly, inadequately, and insufficiently trained and supervised; for their failure to implement and/or enforce meaningful procedures, policies and/or laws to discourage lawless official conduct. Defendants, Camden Police Chief John S. Thomson, New Jersey State Police Superintendent Rick Fuentes, individual defendant, and defendant John Does, are sued individually pursuant to 42 U.S.C. §1983.

## FACTS

21.     On November 11, 2011, the night preceding his death, Jeffrey Thomas ("Mr. Thomas"), went to visit his mother plaintiff, Estella Pratt ( "Ms. Pratt") and his fiancée, Ciarra Wallace ("Ms. Wallace") at her home, which is located in Camden, New Jersey.

22.     Mr. Thomas wanted to speak with his mother and fiancée after someone had tried to break into his mother's house several days earlier through the first floor front window.

23.     During the visit, Jeffrey expressed anxiety concerning his mother and fiancée's well being due to the attempted break in.

5

24.     Mr. Thomas ate dinner with his mother and his fiancée at approximately 8:00 P.M. Three hours later, Mr. Thomas checked the windows and outside perimeter of the home, and returned into the house a few minutes later.

25.     Ms. Pratt was concerned that evening because of Mr. Thomas' emotional state.  Specifically, the anxiety he expressed to she and Ms. Wallace regarding their well-being. Ms. Pratt was also concerned that Mr. Thomas may not have taken his medication.

26.     At around 11:30 P.M. that evening, Ms. Pratt sent Mr. Thomas to the store to get her a soda. She had Mr. Thomas leave the home so that she could call the hospital to inform them of Mr. Thomas' state of mind, and to see if she could have him readmitted to the hospital for observation and treatment.

27.     The hospital dispatched a medical ambulance to his mother's house to come and treat Mr. Thomas.

28.     Because of her concern for her son and his emotional state, Ms. Pratt also contacted the Camden City Police Department to further assist her in helping to get Mr. Thomas into the ambulance.

29.     When the ambulance arrived at Ms. Pratt's house, Mr. Thomas had not returned from the store. The ambulance waited outside the house for approximately five (5) to ten (10) minutes.  The ambulance team then informed Ms. Pratt that they could not wait any longer, and asked her to call them when he returned.

30.     Immediately thereafter, the Camden City Police Department called Ms. Pratt to inform her that the Camden City Police Officers had arrived and were parked outside her door. The police officers did not see Mr. Thomas.  One of the Camden Police Officers proceeded to enter

the home and question Ms. Pratt. The officer asked her if Mr. Thomas was armed. Ms. Pratt

explained that he was not armed, to which the officer responded that "most drug dealers in Camden

City carry a gun." Ms. Pratt told him that her son was not a drug dealer.

31.    The officer then asked Ms. Pratt what Mr. Thomas did for a living, where he

worked, how he paid for his car, who paid for his car, and whether he had a driver's license. Ms.

Pratt told the officer that her son did have a valid driver's license and was a law-abiding citizen who

needed medical attention.

32.    The officer responded by telling Ms. Pratt that "all you mother's spoil these

young men and then want us to go out there and get them." He further stated that Mr. Thomas "most

likely had a gun on him, because most boys in Camden carry a gun, and if he has a gun, we have to

do what we have to do."

33.    In response to the officer's remarks, Ms. Pratt informed him once again that

Mr. Thomas was not armed, and added that he did not have anything alcoholic to drink, and that she

believed that he had not taken his medication which was causing him to be emotional.

34.    Ms. Pratt then implored the Camden Police Officer to please not go out there

and kill her son. Shortly thereafter, the Camden Police Officers left Ms. Pratt's home.

35.    A short time thereafter, Mr. Thomas arrived back at his mother's house, but

left his mother's soda in the car. He returned to his car to get the soda, at which time the Camden

City Police Officers noticed him reaching into his car. They then rammed his car against the curb

with their police units.

36.    Mr. Thomas backed away from the car and began running. The Camden City

Police Officers got out of their car and began chasing him. Mr. Thomas ran east on Whitman

7

Avenue, then south on Mt. Ephraim, then west on Everett Street, and then north on Rose Street back towards his mother house. Once he circled the block and returned just short of the corner of Rose and Whitman where his car was parked just outside his mother's house, several more officers were waiting for him.

37.     These officers were members of the Camden City Police Department and New Jersey State Police. They immediately surrounded Mr. Thomas with their guns drawn.

38.     Mr. Thomas kneeled on the ground and raised both his hands in the air in a position of surrender.

39.     When Ms. Pratt saw that her son had surrendered, she repeatedly pleaded with the officers at the scene not to kill him.

40.     Mr. Thomas was on the ground and had surrendered and was surrounded by the Camden City Police Officers, and/or New Jersey State Troopers.  They then opened fire on him, striking him at least twelve (12) times from the rear, back of the head, upper and lower back, legs and ankles.

41.     The wounds Mr. Thomas suffered as a result of the shooting ultimately caused his death.

42.     At no time did the Camden City Police Officers or New Jersey State Troopers attempt to handcuff Mr. Thomas or take him into custody.

43.     After repeated pleas from Ms. Pratt begging the Camden City Police Officers and New Jersey State Troopers to stop killing her son, the gunfire stopped.

44.     The members of the Camden City Police Department and New Jersey State Police unlawfully exercised deadly force against Mr. Thomas, and wrongfully claimed that he attempted to shoot them in order to justify using that force.

45.     The Camden Police Officers, and New Jersey State Troopers involved in the shooting were not terminated or reprimanded by the City of Camden, Camden City Police Department, or Camden Police Chief John S. Thomson or the State of New Jersey, New Jersey Department of Law & Public Safety, New Jersey State Police, or New Jersey State Police Superintendent Rick Fuentes.

## FIRST CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS

### TITLE 42 U.S.C. § 1983: VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

46.     Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 45 above.

47.     The governmental entity Defendants are charged with the responsibility to protect and serve the public by properly hiring, supervising, training, disciplining, and controlling law enforcement officers under their command, including but not limited to, Camden Police Chief John S. Thomson, Camden City Police Officer Mark Saunders and Terhan Hinson, New Jersey State Police Staff Sergeant Robert May, Sergeant Maurice Smith, Trooper William Nuemann, Trooper Matthew Moore, Trooper Jerome Moran, John Does 3-20; and New Jersey State Police Superintendent Rick Fuentes, and New Jersey State Troopers John Does 26-30.

48.     Defendants' duties include promulgating and enforcing laws, rules, and regulations regarding detaining individual citizens such as Mr. Thomas, and from using excessive and deadly force in an unlawful manner.

49.     Defendants were acting under color of law, and failed to set and follow proper policy, procedure, ordinance, regulations or practices with regard to stopping and detaining someone in Mr. Thomas' circumstances.

50.     Defendants' policy and actions were deliberately indifferent to the constitutional rights of persons in Mr. Thomas' circumstances.

51.     Defendant governmental entities and supervisory officers failed to properly hire, supervise, train, discipline, and control law enforcement officers under their command, and failed to ensure compliance with the laws, rules, and regulations regarding the use of force constituting deliberate indifference to Mr. Thomas' constitutional rights.

52.     Defendants' failure to ensure compliance of the laws, rules and regulations, and constitution regarding the stopping, the detaining, and the use of excessive and deadly force, was so reckless and/or grossly negligent that the misconduct and fatal injury to Mr. Thomas was inevitable and foreseeable.

53.     Defendants' acts or omissions were performed under color of law, which deprived Mr. Thomas of his Fourth, Fifth, and Fourteenth Amendment rights under the U.S. Constitution.

54.     The fatal injuries suffered by Mr. Thomas were directly and proximately caused by the deliberate failure of the defendants to properly hire, supervise, train, discipline, and control law enforcement officers under their command, including, Camden Police Chief John S.

Case 1:13-cv-06830-JBS-AMD   Document 165   Filed 08/17/18   Page 11 of 25 PageID: 2292


Thomson, Camden City Police Officer Mark Saunders and Terhan Hinson, John Does 3-20; and/or New Jersey State Police Superintendent Rick Fuentes, New Jersey State Police Staff Sergeant Robert May, Sergeant Maurice Smith, Trooper William Nuemann, Trooper Matthew Moore, Trooper Jerome Moran, and New Jersey State Police John Does 26-30.

55.     Defendants' deliberate and indifferent failure to promulgate and ensure compliance with applicable laws, rules, and caused Mr. Thomas' death.

## SECOND CLAIM FOR RELIEF

**AGAINST INDIVIDUAL DEFENDANTS, CAMDEN CITY POLICE CHIEF JOHN S. THOMSON AND NEW JERSEY STATE POLICE SUPERINTENDENT RICK FUENTES.**

**TITLE 42 U.S.C. § 1983: VIOLATION OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION**

56.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 54 above.

57.     Defendants are charged with the responsibility to protect and serve the public by properly hiring, supervising, training, disciplining, and controlling law enforcement officers under their command, including, Camden City Police Officer Mark Saunders, Terhan Hinson, New Jersey State Police Staff Sergeant Robert May, Sergeant Maurice Smith, Trooper William Nuemann, Trooper Matthew Moore, Trooper Jerome Moran, Camden City Police Officers John Does 3-20 and New Jersey State Police Trooper John Does 26-30.

58.     Defendants' duties include promulgating, and enforcing laws, rules, and regulations regarding detaining individual citizens, including Mr. Thomas, and the use of excess and deadly force.

59.     Defendants, under color of law, did not set and/or follow proper policy, procedure ordinance, regulation, usage, custom and/or practices with regard to stopping and detaining Mr. Thomas.

60.     Defendants' policy and actions were deliberate and indifferent to the Constitutional Rights of persons in Mr. Thomas' circumstances.

61.     Defendants failed to properly hire, supervise, train, discipline, and control law enforcement officers under their command, and failed to ensure compliance with the laws, rules, and regulations regarding the use of excessive force constituting deliberate indifference to persons in Mr. Thomas' circumstances.

62.     Defendants' failure to ensure compliance of the laws, rules and regulations, and constitution regarding the stopping, the detaining, and the use of excessive and deadly force, was so reckless and/or grossly negligent that the misconduct and fatal injury to Mr. Thomas was inevitable and foreseeable.

63.     The fatal injuries suffered by Mr. Thomas were directly and proximately caused by the deliberate failure of the defendants to properly hire, supervise, train, discipline, and control law enforcement officers under their command, including, Camden Police Chief John S. Thomson, Camden City Police Officer Mark Saunders and Terhan Hinson, John Does 3-20; and/or New Jersey State Police Superintendent Rick Fuentes, New Jersey State Police Staff Sergeant Robert May, Sergeant Maurice Smith, Trooper William Nuemann, Trooper Matthew Moore, Trooper Jerome Moran, and New Jersey State Police John Does 26-30

## THIRD CLAIM FOR RELIEF

**AGAINST DEFENDANTS CAMDEN POLICE OFFICERS MARK SAUNDERS AND TERHAN HINSON, JOHN DOES 3-20, AND NEW JERSEY STATE STAFF SERGEANT ROBERT MAY, SERGEANT MAURICE SMITH, TROOPER WILLIAM NUEMANN, TROOPER MATTHEW MOORE, TROOPER JEROME MORAN, NEW JERSEY STATE POLICE TROOPERS 26–30, IN THEIR INDIVIDUAL CAPACITIES.**

### TITLE 42 U.S.C. § 1983: VIOLATION OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

64.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 63 above.

65.     The acts and omissions of the Defendants occurred within the course and scope of their employment with Camden City, Camden Police Department and/or State of New Jersey, New Jersey Department of Law & Public Safety, New Jersey State Police, and under the color and pretense of laws, statutes, ordinances, regulations, customs, and usage for Camden City, State of New Jersey.

66.     Defendants had a duty to protect and serve the public, including Mr. Thomas.

67.     Some of the law enforcement officials were out of their jurisdiction and did not follow the policies and procedures of the jurisdiction where Mr. Thomas was killed. They did not follow procedures with respect to monitoring and following Mr. Thomas.

68.     Individual defendants were summoned by Mr. Thomas' family to assist in checking on his medical condition.

69.     Prior to encountering Mr. Thomas, the Defendants knew, should have known, and were informed that he was not in possession of any weapon or any other dangerous instrumentalities, and had not made any eminent or other serious threats against anyone to cause them eminent fear, or to be in fear for themselves or others.

70.     There was no government interest to use deadly force.

71.     Defendants, knew, should have known or should have been aware that there was sufficient time each of them to detain Mr. Thomas without force to make sure he was in possession of his mentally faculties.

72.     Defendants, rather than check on the status of Mr. Thomas' physical and mental condition while he was on the ground, used unreasonable and excessive deadly force and shot him at least sixteen times (16) in the back, legs and ankles.

73.     Defendants did not have justification to use unreasonable and unjustified deadly force and were not in fear for safety of themselves or others at the time they discharged their firearms and killed Mr. Thomas.

74.     Defendants' use of force was excessive, unreasonable and not justified and there was no governmental interest to use deadly force.

75.     Defendants had a duty and obligation to Mr. Thomas and each other to intervene and control the situation and advise the other officers to stand down to allow him to be taken into custody or to the hospital.  This is true since the call made by Mr. Thomas' mother was to get help to hospitalize him.

76.     Defendants had an affirmative duty to intercede on behalf of Mr. Thomas to protect his constitutional rights. His constitutional rights were not protected. Had they been, Mr. Thomas would not have been fatally wounded.

77.     Defendants failed to stop discharging their firearms after the first shot to check on Mr. Thomas' condition. Rather they chose to continue to discharge their firearms.

14

78.     As a direct and proximate result of the acts and omissions of the defendants, Mr. Thomas was deprived of his civil rights, privileges and immunities secured by the Fourth and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS STATE OF NEW JERSEY AND CITY OF CAMDEN

### TITLE 42 U.S.C. § 12111 THROUGH 12117
### AMERICANS WITH DISABILITIES ACT

79.     Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 78 above.

80.     The acts of Defendant State of New Jersey's and Defendant City of Camden discriminated against Mr. Thomas as a person with a disability and denied him a reasonable accommodation in violation of his rights under the Americans with Disabilities Act.

## FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS STATE OF NEW JERSEY AND CITY OF CAMDEN

## REHABILITATION ACT OF 1973

81.     Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 80 above.

82.     Defendants State of New Jersey and City of Camden were at all times mentioned herein recipients of federal funds for law enforcement programs and services.

83.     The acts of Defendants State of New Jersey and City of Camden discriminated against Mr. Thomas as a person with a disability and denied him a reasonable accommodation in violation of his rights under the Rehabilitation Act of 1973.

15

## SIXTH CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS

## NEW JERSEY LAW AGAINST DISCRIMINATION

84.     Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 83 above.

85.     Defendants discriminated against Mr. Thomas as a person with a disability and denied him a reasonable accommodation in violation of his rights under the New Jersey Law Against Discrimination.

## SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANT CITY OF CAMDEN

## NEGLIGENCE

86.     Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 85 above.

87.     Defendant City of Camden had a duty to use reasonable care during its interaction with Mr. Thomas, including, but not limited to the duty to properly hire, supervise, train, discipline and control the law enforcement officers under their control, including, Camden Police Chief John S. Thomson, Officer Mark Saunders, Officer Terhan Hinson, and Camden Police Officer John Does 3-20.

88.     Defendant City of Camden also had an on-going duty to continue to monitor and evaluate the performance of the law enforcement officers under its control and take all actions necessary to ensure that members of the public, including Mr. Thomas, are not harmed by unlawful and negligent acts or omissions of law enforcement officers under their control.

16

89.     Defendant City of Camden knew, or should have known through actual or constructive knowledge, that the law enforcement officials posed a danger to the health and safety of members of the public, including Mr. Thomas, and those similarly situated.

90.     The conscious pain and suffering and wrongful death of Mr. Thomas were the direct and proximate result of the negligent acts or omissions of the Defendant City of Camden set forth herein under the following particulars:

a.      Negligently hiring of law enforcement officers involved in the shooting;

b.      Negligently training of law enforcement officers involved in the shooting;

c.      Negligently supervising of law enforcement officers involved in the shooting;

d.      Negligently disciplining of law enforcement officers involved in the shooting;

e.      Negligently retraining of law enforcement officers involved in the shooting;

f.      Negligently failing to remove improper policies, procedures, customs, ordinances, and rules which resulted in improper stopping, detaining, and the use of excessive and deadly force, which would have prevented Jeffrey's wrongful death;

g.      Failing to take any disciplinary action against Camden Police Chief John S. Thomson, Officer Mark Saunders, or Officer Terhan Hinson;

h.      Failing to take any disciplinary action against John Does 1-20 for using excessive force and unjustified deadly force.

91.     Defendant City of Camden is vicariously liable for the negligent acts and omissions of law enforcement officers committed during the course and scope of their employment.

92.     As a direct and proximate result of the negligence acts, omissions, wrongful acts of the City of Camden as outlined above, Mr. Thomas' civil rights were violated and the plaintiff suffered damages as set forth herein.

### EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS CAMDEN POLICE CHIEF JOHN S. THOMSON, NEW JERSEY STATE POLICE SUPERINTENDENT RICK FUENTES

### NEGLIGENCE

93.     Plaintiffs re-alleges and incorporate herein by reference paragraphs 1 through 92 above.

94.     Defendants, Camden Police Chief John S. Thomson and/or New Jersey State Police Superintendent Rick Fuentes had a duty to use reasonable care to Mr. Thomas, including, but not limited to, the duty to properly hire, supervise, train, and discipline and control the law enforcement officers under their control, including, Camden Police Officer Mark Saunders, Terhan Hinson, Camden City Officer John Does 1-20; and/or New Jersey State Staff Sergeant Robert May, Sergeant Maurice Smith, Trooper William Nuemann, Trooper Matthew Moore, Trooper Jerome Moran, and New Jersey State Police Trooper John Does 26-30.

95.     Defendants had an on-going duty to continue to monitor and evaluate the performance of the law enforcement officers under their control and take all actions necessary to ensure that members of the public, including Mr. Thomas, were not harmed by unlawful and negligent acts or omissions of law enforcement officers under their control.

96.     Defendants knew or should have known through actual or constructive knowledge that the law enforcement officials posed a danger to the health and safety of members of the public, including Mr. Thomas, and those similarly situated.

97.     The conscious pain and suffering and wrongful death of Mr. Thomas were the direct and proximate result of the negligent acts or omissions of the Defendants set forth herein under the following particulars:

a.     Negligently hiring of law enforcement officers involved in the shooting;

b.     Negligently training of law enforcement officers involved in the shooting;

c.     Negligently supervising of law enforcement officers involved in the shooting;

d.     Negligently disciplining of law enforcement officers involved in the shooting;

e.     Negligently retraining of law enforcement officers involved in the shooting;

f.     Negligently failing to remove improper policies, procedures, customs, ordinances, and rules which resulted in the use of excessive and deadly force, which would have prevented Mr. Thomas' wrongful death and conscious pain and suffering;

g.     Failing to take any disciplinary action against John Does 1-30 for using excessive force and unjustified deadly force.

98.     Defendants are personally liable for the negligent acts and omissions, which were committed during the course and scope of their employment.

99.     As a direct and proximate result of the law enforcement officials, negligence acts, omissions, wrongful acts, Mr. Thomas' civil rights were violated and the plaintiff suffered damages as set forth herein below.

## NINTH CLAIM FOR RELIEF

**AGAINST DEFENDANTS, CAMDEN POLICE OFFICER MARK SAUNDERS, OFFICER TERHAN HINSON, CAMDEN CITY POLICE OFFICER JOHN DOES 3-20, NEW JERSEY STATE STAFF SERGEANT ROBERT MAY, SERGEANT MAURICE SMITH, TROOPER WILLIAM NUEMANN, TROOPER MATTHEW MOORE, TROOPER JEROME MORAN, AND NEW JERSEY STATE POLICE TROOPER JOHN DOES 26-30, IN THEIR INDIVIDUAL CAPACITIES**

### NEGLIGENCE

100.     Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 98 above.

101.     The acts and omissions of law enforcement officers alleged herein were committed within the scope of their employment with the City of Camden, Camden Police Department, and/or State of New Jersey, New Jersey Department of Law & Public Safety, and New Jersey State Police.

102.     Law enforcement officers owed a duty of reasonable care to the Mr. Thomas, which was breached, including but not limited to a duty to protect and serve him and others in similar situations.

103.     The law enforcement officers breached their duty of reasonable care to Mr. Thomas.

104.     As a direct and proximate result of the law enforcement officers, negligent acts, omissions, and wrongful conduct, Mr. Thomas was fatally injured.

105.     Law enforcement officers were negligent in, among other things, the following particulars:

a.     Negligently monitoring and ramming Mr. Thomas' car;

b.     Negligently monitoring and chasing Mr. Thomas;

c.     Failing to assist Mr. Thomas and help him get the medical attention he needed;

d.     Negligently failing to handcuff Mr. Thomas when he had surrendered, and was on his knees, on the ground with both hands raised in the air.

e.     Negligent use of a firearm, including the wrongful discharge of a firearm;

f.     Negligent use of unreasonable and unjustified force and excessive deadly force;

g.     Negligent performance of duties as a law enforcement officer;

h.     Failing to rationally and objectively view the circumstances, which did not warrant unjustified and excessive deadly force;

i.     Failing to give Mr. Thomas commands to take him into custody, rather than shooting him at least twelve (12) times in the head, back and legs, causing his death;

j.     Acting unlawfully and unobjectively outside their jurisdiction;

k.     Failing to assess the circumstances which reveal that Mr. Thomas had not made any threatening gestures, and had not made any threats of harm to the law enforcement officials, or any other individuals in the area;

l.     Failing to remain in possession of their mental and physical faculties to realize that deadly force was unjustified, excessive, and unreasonable;

m.     Failing to follow proper procedure, policy, and custom of their departments in handling this situation;

n.     Failing to stand down to allow Mr. Thomas to be handcuffed;

o.     Failing to communicate and to determine an appropriate plan after Mr. Thomas had surrendered and was detained;

p.     Failing to recognize the lack of conduct by Mr. Thomas that rose to the level of fear or peril to the law enforcement officials, or any other individuals before fatally shooting Jeffrey.

106.   Defendants are personally liable for the negligent acts and omissions which were committed during the course and scope of their employment.

107.   As a direct and proximate result of the law enforcement officers' negligent acts, omissions, and wrongful acts, Mr. Thomas' civil rights were violated and the plaintiff suffered damages as set forth herein below.

## TENTH CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

## PURSUANT TO *PORTEE v. JAFFE*

108.   Plaintiff re-alleges and incorporates herein by reference paragraphs 1 through 106 above.

109.   Estella Pratt is the natural mother of the decedent Jeffrey Thomas.  Ciarra Wallace is the fiancé of the decedent Jeffrey Thomas.

110.   Both Estella Pratt and Ciarra Wallace witnessed with horror the fatal shooting of Jeffrey Thomas by the Camden Police Officers and New Jersey State Police Troopers as their conduct was extreme, excessive and outrageous by discharging 44 bullets leading to his demise.

111.   Both Estella Pratt and Ciarra Wallace watched helplessly as Jeffrey Thomas raised his hands in the air and kneeling down in a surrendering position with no weapon in his hand to the commands of the law enforcement officers but were powerless to do anything to help him as the bullets violently penetrated his body.

112.   Estella Pratt has required medical care and intensive counseling because of her extreme emotional and mental distress that resulted from the horrific experience of witnessing

her only son Jeffrey Thomas suffer a violent death from the unjustified, excessive and unreasonable

shooting by the Camden Police Officers and New Jersey State Police Troopers.

113.    Estella Pratt is entitled to recovery for her extreme emotional distress and

mental anguish pursuant to *Portee v. Jaffee*, 82 N.J. 295 (1980).

114.    As a direct result of defendants' extreme and outrageous conduct in the

unjustified, excessive and unreasonable use of deadly force in the fatal shooting of Jeffrey Thomas

by the Camden Police Officers and New Jersey State Police Troopers, Estella Pratt has suffered

severe and extreme emotional distress, as well as mental anguish; whereby Estella Pratt demands

judgment against all Defendants jointly, severally or in the alternative, for economic and non-

economic damages, together with interest and costs of suit.

## ELEVENTH CLAIM FOR RELIEF

## AGAINST ALL DEFENDANTS

## WRONGFUL DEATH:  N.J.S.A. § 31:1

115.    Plaintiff re-alleges and incorporates herein by reference paragraphs 1

through 114 above.

116.    As a result of all of the defendants' intentional, willful, wanton, outrageous,

reckless, gross negligent and negligent conduct, Mr. Thomas was put in a position, where the

defendants' discharged their firearm unprovoked, using unjustified and unreasonable excessive and

deadly force striking and killing him for no reason.

117.          Plaintiff alleges that defendants wrongfully killed Mr. Thomas, and asserts a claim for

wrongful death on his behalf. This claim includes the loss of love, comfort, counsel, society,

companionship, and economic support in an amount to be established at trial, damages for medical

and funeral expenses.

## TWELFTH CLAIM FOR RELIEF

**AGAINST ALL DEFENDANTS**

**NEW JERSEY CONSTITUTION AND NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-2**

118. Plaintiff re-alleges and incorporate herein by reference paragraphs 1 through 117 above.

119. Defendants' acts and omissions violated Mr. Thomas' rights as secured by the New Jersey Constitution.

120. Defendants' acts and omissions violated Mr. Thomas' rights secured by N.J.S.A. 10:6-2.

**WHEREFORE**, plaintiff prays for judgment against the defendants in an amount to be determined by the finder of fact:

a.   For special and general damages in an amount to be established at trial;

b.   For damages for violations of civil rights;

c.   For damages for intentional infliction of emotional distress

d.   For punitive damages in amount to be established at trial against each Defendant who can be made liable for punitive damages;

e.   For wrongful death, including loss of love, society, comfort, counsel, companionship, and economic support in an amount to be established at trial;

f.   For medical and funeral expenses in an amount to be established at trial; and

g.   For prejudgment and post judgment interest, and such other relief as the court deems equitable, together with reasonable attorneys' fees and the costs of this action.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury of all issues triable by jury.

DATED: August 17, 2018

By: ___ /s/ Melvin M. Wright, Jr. _____
Melvin M. Wright, Jr.
LAW OFFICES OF MELVIN M. WRIGHT, JR., LLC
1100 Taylors Lane
Unit 9
Cinnaminson, NJ  08077
(609) 505-2365 – Telephone
(609) 531-6350 – Facsimile
mwrightjr7@comcast.net
Attorneys for Plaintiff

By: ___ /s/ Anthony H. Ogozalek, Jr. _____
Anthony H. Ogozalek, Jr.
LAW OFFICES OF ANTHONY H. OGOZALEK, JR.
1100 Taylors Lane
Unit 9
Cinnaminson, NJ  08077
(856) 816-8574 – Telephone
(856) 316-4679 – Facsimile
aogozalek@ogozaleklaw.com
Attorneys for Plaintiff